# EXHIBIT "A"



## Procedures for Resolution of Reports Against Faculty Under Cornell University Policy 6.4 for the Following Acts of Prohibited Conduct:

- Prohibited Discrimination;
- Protected-Status Harassment, including Sexual Harassment;
- Sexual Violence, including Rape, Sexual Assault, Sexual Battery, Sexual Abuse, and Sexual Coercion;
- Retaliation

These procedures apply to all units of the University except for Weill Cornell Medicine, which will administer Policy 6.4 under Weill Cornell Medicine procedures.

## Table of Contents

I.   DEFINITIONS OF PROHIBITED CONDUCT ................................................................4
   A.   Prohibited Discrimination..........................................................................................4
   B.   Protected Status Harassment (see also "Sexual Harassment")...............................4
   C.   Rape .............................................................................................................................4
   D.   Retaliation...................................................................................................................4
   E.   Sexual Abuse ..............................................................................................................5
   F.   Sexual Assault............................................................................................................5
   G.   Sexual Battery ............................................................................................................5
   H.   Sexual Coercion .........................................................................................................5
   I.   Sexual Harassment....................................................................................................5
   J.   Sexual Violence .........................................................................................................5
II.   ALTERNATIVES TO FILING A FORMAL COMPLAINT ...........................................5
   A.   Informal Resolutions .................................................................................................5
   B.   Mediating a Concern.................................................................................................6
   C.   Interim Measures.......................................................................................................6
III.   FILING A FORMAL COMPLAINT AGAINST A FACULTY MEMBER......................6
   A.   Time Limits for Filing a Formal Complaint ...........................................................6
   B.   Formal Complaint Process with WPLR .................................................................7
   C.   Investigation of a Formal Complaint.......................................................................7
   D.   Duty to Cooperate with Investigation .....................................................................8
   E.   Resolution by Agreement..........................................................................................8
   F.   Investigator's Report of Investigation Findings......................................................8
   G.   Dismissal of Case by Investigator ............................................................................9
   H.   Review of Investigative Report and Decision ........................................................9
   I.   Appeals by Complainant.........................................................................................10
   J.   Appeal by Faculty Member ....................................................................................11
      1.   To Dean or Equivalent Unit Head......................................................................11
      2.   To the Committee on Academic Freedom and Professional Status of the Faculty .11
   K.   Grievance from Disciplinary Action Resulting from Investigation against Faculty ..12
IV.   ADDITIONAL DEFINITIONS RELEVANT TO PROHIBITED CONDUCT UNDER POLICY 6.4..............................................................................................................................12
   A.   Consent......................................................................................................................12
   B.   Discrimination/Harassment Complaint ...............................................................12
   C.   Faculty Co-Investigator...........................................................................................12
   D.   Forcible Compulsion...............................................................................................12
   E.   Incapable of Consent ...............................................................................................12
   F.   Investigator ..............................................................................................................13
   G.   Mentally Disabled....................................................................................................13
   H.   Mentally Incapacitated ...........................................................................................13
   I.   Physically Helpless .................................................................................................13
   J.   Public Lewdness......................................................................................................13



|   |   |   |
|---|---|---|
| K. | Reviewer | 13 |
| V. | THE INVESTIGATION PROCESS | 13 |
| A. | The Investigation Process: Features and Steps | 13 |
| B. | Challenge to Investigator | 15 |

APPENDIX A: COMMITTEE ON ACADEMIC FREEEDOM AND PROFESSIONAL STATUS OF THE FACULTY PROCEDURES..................................................................15
I. GENERAL PROVISIONS....................................................................15
II. INFORMAL PROCEEDINGS..............................................................16
III. FORMAL HEARINGS.........................................................................16
IV. DECISION AND REPORT..................................................................17



## I. DEFINITIONS OF PROHIBITED CONDUCT

### A. Prohibited Discrimination

When an employment or academic decision that results in negative and/or different treatment of an individual based upon his or her membership in an Equal Education and Employment Opportunity ("EEEO")-protected class, such as denying an opportunity for which an individual is qualified, not considering a person for an opportunity that is open to others, singling a person or group for different treatment because of her, his or their EEEO-protected class status, failure to provide reasonable accommodation for a disability or religious belief or practice; reinforcing the use of stereotypes that unreasonably impacts a person's environment or opportunities.

### B. Protected Status Harassment (see also "Sexual Harassment")

When an individual is targeted with verbal, written, visual, or physical conduct based on that person's EEEO- protected class status that unreasonably interferes with the individual's work or academic performance, or creates an intimidating, hostile, or offensive working or learning environment.

Protected-status harassment, including sexual harassment, occurs when an individual is targeted with verbal, written, visual, or physical conduct based on that person's EEEO-protected status that unreasonably interferes with the individual's work or academic performance, or creates an intimidating, hostile, or offensive working or learning environment. The conduct constitutes harassment under any of the following conditions:
1. The conduct is direct.
2. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or academic status.
3. Submission to, or rejection of, such conduct by an individual is used as the basis for an employment or academic decision affecting that person.
4. The conduct is sufficiently severe or pervasive to alter the conditions of the victim's employment or academic pursuits, ad creates a work or educational environment that a reasonable person would find abusive.

### C. Rape

When, without consent, there is penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, or use of a person's mouth on another person's genitalia. Rape is a type of sexual assault.

### D. Retaliation

To seek revenge, reprisal, or injury to an individual or group who has exercised the right to file a written complaint or make an oral or written report of prohibited discrimination, and/or protected-status (including sexual) harassment, sexual assault or violence, or has participated in an investigation into allegations of such activity, or has opposed discriminatory or sexual harassing conduct, including sexual violence or assault.



### E. Sexual Abuse

Touching of the sexual or other private parts of another person by forcible compulsion or without the latter's consent or with someone who is incapable of consent. Sexual abuse is a type of sexual assault.

### F. Sexual Assault

A broad category that includes, but is not limited to, public lewdness, rape, sexual battery, and sexual abuse.

### G. Sexual Battery

Touching of a sexual nature of a person by another person by forcible compulsion or without the latter's affirmative consent or with someone who is incapable of affirmative consent. Sexual battery is a type of sexual assault.

### H. Sexual Coercion

To obtain compliance with sexual acts by using physically or emotionally manipulative actions or statements or expressly or implicitly threatening the person or another person with negative actions. Examples of sexual coercion include statements such as "I will ruin your reputation," or "I will tell everyone," or "your career (or education) at Cornell will be over."

### I. Sexual Harassment

A form of protected-status harassment that constitutes unwelcome sexual advances, requests for sexual favors, or other oral, written, visual, verbal or physical conduct of a sexual nature that unreasonably interferes with the individual's work or academic performance, or creates an intimidating, hostile, or offensive working or learning environment under any of the following conditions:

> 1. Submission to, or rejection of, such conduct either explicitly or implicitly is (1) made a term or condition of an individual's employment or academic status, or (2) used as a basis for an employment or academic decision affecting that person; or

> 2. The conduct is sufficiently (1) persistent, severe, or pervasive, and (2) has the purpose or effect of altering the conditions of an individual's employment or academic pursuits in a way that a reasonable person would find abusive, hostile, or offensive.

### J. Sexual Violence

A broad term that refers to physical acts perpetrated without consent or when a person is incapable of giving consent. This includes rape, sexual assault, sexual battery, sexual abuse, and sexual coercion.

## II.   ALTERNATIVES TO FILING A FORMAL COMPLAINT

### A. Informal Resolutions

Members of the Cornell community have an option to resolve concerns of prohibited harassment and discrimination without an investigation under this policy by acting through the offices of Workforce

Procedures for Resolution of Reports Against Faculty Under Cornell University Policy 6.4
Originally Issued: 7/8/1996
Last Updated: 2/8/2017                                5



Policy and Labor Relations ("WPLR") who will work with the appropriate university officials to achieve a resolution under applicable staff employee or academic policy/ protocol. If those officials resolve the matter, no complaint may be filed and no appeal may be taken.

### B. Mediating a Concern

**Note:** In cases involving allegations of sexual violence, mediation is not appropriate, even on a voluntary basis, and will not be used to resolve sexual violence complaints.

The primary objective of mediation is to permit the parties to resolve the dispute on their own, quickly and confidentially. Both the complainant and alleged respondent must agree to mediation. At any stage during or upon the conclusion of the mediation process, either party may decide to proceed by formal investigation.

The mediation process may be particularly suitable when the alleged respondent's conduct was unintentional or unknowingly offensive.

If a complainant and the alleged respondent agree to proceed by mediation, a trained individual designated by the vice presidents for Human Resources, or their designee(s), will interview the complainant to determine the factual allegations on which the allegation of discrimination or harassment is based, and the terms satisfactory to the complainant upon which the complaint may be conciliated. The mediation process must be completed within 20 working days, but is subject to extension as necessary or upon a showing of good cause. Both parties must respect the confidentiality of the mediation process.

If the complaint is mediated successfully, a mediation agreement will be prepared presenting the agreed-upon terms that comply with university policies and procedures. The two parties must sign the agreement to indicate the dispute is fully and finally resolved. If a party fails to comply with this agreement, the agreement may be used as evidence in any subsequent investigations relating to charges of prohibited discrimination or protected-status harassment.

No written record of the mediation process will be retained with the exception of the mediation agreement, which will be made available to the parties upon request.

### C. Interim Measures

At the request of the complainant or at its own discretion, WPLR may recommend to the appropriate university official under applicable staff or academic policy interim measures to protect the safety and well-being of members of the university community. These measures may include no-contact orders, change of housing or place of employment or schedule, change of class schedule or location, change of supervision, temporary suspension, or otherwise.

## III.   FILING A FORMAL COMPLAINT AGAINST A FACULTY MEMBER

### A. Time Limits for Filing a Formal Complaint

Complaints brought against faculty by staff or faculty must be filed with WPLR within six (6) months of the alleged action, with the following exception: for students bringing a complaint against faculty in the



context of a subordinate-supervisory relationship between the faculty member and the student (such as in relation to teaching, advising, research, and thesis or dissertation supervision), a student may file a complaint one year after no longer under the faculty's supervision or three years from the date of the alleged behavior, even if the student is no longer affiliated with the university, whichever is earlier.

### B. Formal Complaint Process with WPLR

An individual or group may file a formal complaint with WPLR.  CUPD may investigate alleged criminal matters and assist in investigations of alleged policy violations.

The complainant may be a single person or several individuals. If there are several individuals, and they cannot agree on an approach or desired outcome, the complaint will be divided into two or more complaints. Each complainant must describe verbally or in writing the alleged act or acts, identify the person or persons purportedly responsible, and indicate the date or approximate date on which the prohibited conduct occurred.

Generally, complaints will only be investigated when the complainant signs a complaint. In extraordinary circumstances, however, WPLR may determine on its own to investigate prohibited conduct that interferes with the University's ability to provide a safe and non-discriminatory environment, e.g., acts of violence, use of a weapon, involvement of minor child, even when the complaining party does not wish to pursue a complaint.  charges. In such circumstances, WPLR may also recommend to the appropriate university official interim steps to protect the safety and well-being of members of the university community. In addition, if a complainant does not elect to pursue any process under this policy, the appropriate university official may request an investigation under this policy. In such cases, the complainant will be advised of the steps being taken and may be asked to serve as a witness in the investigation process but shall not be treated as a party with rights of appeal, etc.

If WPLR determines that the complaint (a) describes an alleged violation of this policy, it will notify the respondent that he or she has been named in a complaint and proceed under this policy; or, (b) does not describe an alleged violation of this policy, it will notify the complainant that the complaint is dismissed, and the complainant will be informed of his or her right, if any, to appeal under this policy and/or to seek external avenues of complaint resolution.

If the complainant's concerns are unrelated to prohibited discrimination, protected- status harassment or other prohibited conduct, WPLR may refer the complainant to or cooperate with another university office to investigate and/or address such unrelated concerns.

When a complainant does not pursue a complaint that he, she, or the group has filed, WPLR will maintain confidentially materials obtained during the complaint filing for at least three years, or until any external agency investigation or legal action is concluded, whichever is later. These records cannot be considered for any purpose in the mediation, investigation, or adjudication of future discrimination or harassment cases.

### C. Investigation of a Formal Complaint

The purpose of the investigation is to gather evidence relating to the alleged prohibited conduct and to determine whether the respondent engaged in the prohibited conduct by a preponderance of the evidence (i.e., it is more likely than not that the respondent engaged in prohibited conduct.)



The investigator conducts these formal investigations subject to extension by the investigator as may be necessary or for good cause. During investigations, the investigator will keep both parties informed on the investigation's status, as appropriate. Additional information about WPLR investigations is included in Section V below.

When a complaint arises out of the nature of a subordinate-supervisory relationship between a faculty member and the student (such as while engaged in teaching, advising, research, and thesis or dissertation supervision), or that could have involved an issue of academic freedom, in consultation with the provost, the dean of faculty will designate a faculty member to serve as a co-investigator, and state in writing to all concerned parties the reason for this selection. Pursuant to procedures established by the Faculty Senate, the faculty co-investigator must be selected from an elected pool of appropriately trained faculty members. The faculty co-investigator must collaborate fully with the WPLR investigator in all phases of the investigation.

Throughout the investigative process, the investigator may consult the provost, vice president for human resources, vice president for student and campus life, dean of faculty, other appropriate university officials, subject-matter experts, and/or university counsel.

Throughout the investigative process, the complainant and respondent may seek the advice of personal attorneys and advisors. Such representatives may attend their own clients' or advisees' investigative interview, but may not respond to questions for their clients or advisees, and may not pose questions. Adversarial hearings (including confrontation, cross-examination by the parties, and active advocacy by attorneys) are not permitted during the investigative process.

### D. Duty to Cooperate with Investigation

University faculty, staff members, and students must cooperate with investigations of prohibited discrimination and protected-status harassment occurring in the context of employment and academic appointment, and in relation to a university activity. A faculty or staff member or student who has relevant information, but refuses to cooperate after being asked to do so during an investigation, may be subject to disciplinary action.

If parties choose not to discuss the matter with the investigator, the matter will proceed without their participation.

### E. Resolution by Agreement

At any point in the investigation or the formal complaint process, the investigator or any of the parties may suggest a settlement of the matter based on the investigation up to that point. The investigator or his or her designee will serve as an impartial communicator so the parties will not have direct contact. Any information provided or discussions with the investigator or designee in attempts to settle the matter may not be considered part of the investigation. If the parties do not come to an agreement regarding settlement, the formal complaint process continues, as described herein.

### F. Investigator's Report of Investigation Findings

1. Investigator's Report: Upon concluding an investigation, the investigator must produce a written investigation report, which must include the following:



- The scope of the investigation.
- A summary of the findings.
- Recommendations for any corrective actions and/or sanctions or disciplinary actions.
- Any non-punitive, preventative remedies for the complainant.

If warranted, recommended action to restore the respondent's reputation, such as notifying persons who participated in the investigation, and/or a public announcement of the outcome.

2. Disciplinary Action: Disciplinary action for prohibited discrimination and protected-status harassment, including sexual violence/assault, may include an oral or a written warning, a written reprimand, a requirement to attend training, work restrictions, salary reduction or limitation, suspension, dismissal/termination, community work, fine, probation, educational classes, counseling, papers, directed study, letters of apology, restitution, orders to perform or to stop certain actions, or other educational sanctions. The appropriate university official determines such action based on the recommendations in the investigation report.

## G. Dismissal of Case by Investigator

The investigator may dismiss a complaint and close the case where the complaint:

- Is not reported or filed in a timely manner.
- Is not supported by sufficient facts, lacks merit based upon the available evidence, or does not fall within the jurisdiction of the investigator.

Similarly, the investigator may dismiss a complaint and close the case under any of the following circumstances:

- The complainant fails or refuses to appear or to be available for interviews or conferences as necessary.
- The complainant cannot be located after reasonable efforts have been made, and has not responded for at least ten (10) calendar days to a notice sent by the investigator to his or her last known residence, office, or email address.
- The complainant fails to provide requested, necessary information.
- The complainant fails or refuses to cooperate with the investigation to the extent that the investigator is unable to reasonably resolve the charge.

If the investigator determines that a complaint should be dismissed, the complainant will be informed of that decision, and given an opportunity to submit a written response to the reviewer within ten (10) working days. If the dismissal is affirmed by the reviewer, the complainant shall have a right of appeal under the appeal procedures, herein. Furthermore, the disposition will include, if appropriate, an attempt to restore the reputation of the respondent (such as deletion of records, and, unless the respondent otherwise requests, notification to persons who participated in the investigation of the charge, and/or public announcement of the outcome consistent with any applicable requirements under the Family Education Rights and Privacy Act [FERPA]).

## H. Review of Investigative Report and Decision

Before making any decision following the investigation, the appropriate dean must forward to the complainant and respondent, copies of the summary of the investigation report, and provide both parties

a reasonable opportunity to submit written comments (that is within ten (10) working days unless extended by the dean or equivalent unit head). In addition, a copy of the report must be forwarded to the dean of faculty.

The reviewer (or the president or board of trustees, if appropriate) to whom the investigation report summary is forwarded ultimately may accept, modify or reject the determination or recommended sanctions and/ or remedial measures, or return the report for further investigation.

During this review, the reviewer may consult confidentially with university counsel, appropriate university officials, and with the respondent's department head if disciplinary actions are recommended, concerning the sufficiency of the investigation and the findings or any recommendations.

The reviewer shall issue a final determination in writing, simultaneously, to all complainants and respondents.

If the complainant or respondent does not object to the final determination of the reviewer within ten (10) working days (unless otherwise extended) of it being sent to him or her, and the reviewer agrees that the charges and sanctions and/or remedial measures presented therein are valid, the appropriate dean will review and implement the sanctions and/or remedial measures recommended in the investigation report within ten (10) business days, except for good cause shown.

## I. Appeals by Complainant

Appeals by complainants from a determination that a complaint of alleged prohibited conduct is not meritorious, or that a discipline or remedy is inadequate, must be made within ten (10) working days of the determination to the provost, or a designee, when the respondent is a member of the faculty.

No appeal shall be heard by a university official who is a respondent, and in such cases, an appropriate university official will be designated by the president, or a designee, to hear the appeal.

Appeals may be grounded on any of the following bases:

1. The remedial actions awarded the complainant are not commensurate with the injury or is unjust.
2. The sanction is not commensurate with the violation or is unjust.
3. The investigator or reviewer violated the fair application of relevant university procedures and such violation may have had a prejudicial effect upon the outcome.
4. The investigator or reviewer committed a prejudicial error in interpreting the policy or code.
5. The investigator or reviewer rendered a decision clearly against the weight of the evidence.
6. New evidence was discovered after the decision and could not have readily been discovered before the decision, which would change the outcome.

The appeal shall be conducted in accordance with procedures to be established by the office hearing the appeal, including scheduling any meeting on the appeal, but shall commence with the requirement that the complainant submit a written statement of the basis for the appeal, setting forth the grounds for the appeal and the reasons therefore, accompanied by a copy of the determination being appealed. A written decision shall be made by the provost, or designee, for appeals brought within thirty (30) days after



submission, or any meeting on the appeal, whichever is later, unless extended for good cause. The decision shall be final and binding on all parties.

## J. Appeal by Faculty Member

1. <u>To Dean or Equivalent Unit Head</u>

If the respondent faculty member objects to the final determination by the reviewer, but does not contend that his or her conduct arose out of the nature of a subordinate- supervisory relationship between the faculty member and a student (such as while engaged in teaching, advising, research, and thesis or dissertation supervision), or that the conduct is protected by academic freedom, he or she may appeal, and ask the appropriate dean or equivalent unit head to review the evidence, determination, and/or recommended sanctions, or remedial measures in the investigation report. The appropriate dean or equivalent unit head will conduct such a review, and may accept, modify, or reject the determination, or recommended sanctions and/or remedial measures.

2. <u>To the Committee on Academic Freedom and Professional Status of the Faculty</u>

If the respondent faculty member objects to the final determination of the reviewer and contends that his or her conduct arose out of the nature of a subordinate- supervisory relationship between a student and faculty member, or was protected by academic freedom, he or she must submit, within ten (10) working days of receiving the report, a written request for a review of the complaint to the Committee on Academic Freedom and Professional Status of the Faculty ("the Committee"), with a copy to WPLR and the appropriate dean or equivalent unit head. The Committee's procedures for "Adjudicating Contested Investigatory Charges and Recommended Sanctions in Discrimination or Harassment Cases" are described in Appendix A.

The Committee must make an initial determination within ten (10) working days of receiving the charged faculty member's request. If the Committee determines by majority vote that the alleged behavior did arise out of the nature of a subordinate- supervisory relationship, or that an issue of academic freedom is involved, it will make its own determination on the charges. (<u>See</u> Appendix A for the procedures of the Committee.)

If the Committee determines that the alleged behavior did not arise out of the nature of a subordinate-supervisory relationship, or that no issue of academic freedom is involved, the Committee has no further role. Otherwise, it will make a written report on its findings of fact, and provide copies to the complainant and the respondent, as well as to WPLR. WPLR then will forward its report of findings and recommended remedies to the appropriate dean or equivalent unit head for the final decision on appropriate sanctions.

The respondent or the complainant may rebut to the appropriate dean or equivalent unit head the Committee's recommendations of any sanctions. An intention to rebut must be filed with the dean or equivalent unit head within three days of receipt of the Committee's final report. The completed rebuttal must be filed with the dean or equivalent unit head within two (2) weeks of receiving of the Committee's final report. If the recommendations are appealed, the dean or equivalent unit head will refrain from considering the appropriate sanctions until the complete rebuttal has been filed.

The dean or equivalent unit head must accept the Committee's findings of fact and conclusions. However, he or she may modify the Committee's recommended sanctions. Before reaching a final decision

concerning any modifications, he or she must explain the rationale for the decision in a written communication to the Committee and will consider the Committee's response to those modifications. If the dean or equivalent unit head seeks to impose the sanction of dismissal, the matter will be handled pursuant to the trustees' dismissal procedures. This determination is final.

### K. Grievance from Disciplinary Action Resulting from Investigation against Faculty

University Policy 6.2.10, Establishment of College-Level Academic Grievance Procedures or any other applicable grievance procedure will govern any grieved or contested disciplinary action, other than contested cases involving academic freedom issues, which is the adjudicatory responsibility of the Committee on Academic Freedom and Professional Status of the Faculty.

## IV. ADDITIONAL DEFINITIONS RELEVANT TO PROHIBITED CONDUCT UNDER POLICY 6.4

### A. Consent

Words or actions that show a voluntary agreement to engage in mutually agreed upon sexual activity. Consent is not present when one is incapable of consent, subject to coercion or threat of coercion, or subject to forcible compulsion.

An individual may not presume consent by silence or context alone. Consent for one act does not imply consent for another act.

### B. Discrimination/Harassment Complaint

A formal written statement filed with the Office of Workforce Policy and Labor Relations (WPLR) alleging discriminatory and/or harassing activity prohibited under this policy that calls for official action or treatment in response.

### C. Faculty Co-Investigator

Selected by the dean of faculty, after consulting with the provost or his or her designee, from an elected pool of appropriately trained faculty members to collaborate with WPLR in investigating cases in which a faculty member is accused of prohibited discrimination, protected- status harassment, or sexual assault/violence as described in this policy.

### D. Forcible Compulsion

Forcible compulsion is use of physical force or a threat, express or implied, that places a person in fear of physical harm to, or kidnapping of, himself, herself, or another person.

### E. Incapable of Consent

A person who is (1) less than seventeen years of age, (2) mentally disabled, (3) mentally incapacitated, (4) physically helpless, or (5) physically unable to give affirmative consent.



### F. Investigator

A representative from WPLR that has been trained and charged to review complaints of prohibited discrimination, protected-status (including sexual) harassment, sexual assault/violence, or prohibited retaliation with an outcome of developing recommendations for addressing the complaint.

### G. Mentally Disabled

A person whose normal cognitive, emotional, or behavioral functioning renders him or her incapable of appraising the nature of his or her conduct.

### H. Mentally Incapacitated

Lack of the cognitive ability to make important life decisions. The incapacitation may be permanent or temporary, and includes situations when the individual has lost cognitive ability due to ingesting alcohol or other drugs, either voluntarily or involuntarily.

### I. Physically Helpless

When a person is unconscious or for any other reason is physically unable to communicate willingness to act or is physically unable to give affirmative consent.

### J. Public Lewdness

Intentional exposure of the private or intimate parts of the body in a sexually suggestive manner in public or in private premises when the perpetrator of the exposure may be readily observed. Public lewdness is a type of sexual assault.

### K. Reviewer

A university official who reviews investigation reports and makes a final determination under this policy of (1) whether a complaint is meritorious, and (2) if so, what sanctions shall be imposed. Review of complaints against faculty under this policy shall be by a dean or equivalent unit head with authority over the respondent(s). The reviewer shall have access to the entire record on which the investigation report is based and shall receive appropriate training for this function. When a dean, or vice provost is the respondent, the summary will be forwarded to the provost or his or her designee. If the provost is the respondent, the investigation report is forwarded to the university president or his or her designee. If the university president is the respondent, the investigation report is forwarded to the board of trustees through university counsel and secretary of the corporation.

## V.   THE INVESTIGATION PROCESS

### A. The Investigation Process: Features and Steps



Investigations[1] conducted by Office of Workforce Policy and Labor Relations (WPLR) or by the WPLR along with a faculty co-investigator, will be guided by the following process:

1. Identify the individual alleged to have discriminated against or harassed the complainant (the respondent).
2. Thoroughly ascertain all facts in connection with the alleged incident, beginning by initially and separately interviewing the complainant and the respondent.
3. Determine how the complainant responded to the alleged discrimination or harassment and determine what efforts were made, if any, at informal resolution and/or interim measures, such as separating the individuals.
4. Determine whether the complainant informed other parties or supervisors of the situation and what response, if any, the complainant received from these individuals.
5. Determine the frequency and type of the alleged discrimination or harassment and, if possible, the dates and locations where the alleged discrimination or harassment occurred.
6. Develop a thorough understanding of the professional or personal relationship, degree of control, and amount of interaction between the two parties.
7. Determine whether the complainant knows of or suspects that the respondent has discriminated against, or harassed other individuals.
8. During the first interview with the respondent, inform the respondent of all of the charges being made, along with the evidence supporting them, remind the respondent of the university's policy against retaliation for making a complaint of discrimination or harassment and ask for the respondent's explanation of the alleged behavior.
9. Receive any other evidence that the respondent wishes to present; and thoroughly examine and evaluate the rebuttals made by the respondent.
10. Present to the complainant additional information learned in the course of the investigation that will be germane to the outcome of the investigation.
11. Interview, as appropriate, witnesses identified by complainant or respondent or who observed, or were told about, the alleged discrimination or harassment.
12. Remind all parties and witnesses on a case by case basis of the need for confidentiality, consistent with the requirements of Policy 6.4.
13. Review, as appropriate, personnel files maintained by departments and/or administrative units; previously concluded mediation agreements; previous records of findings for the charge of discrimination or harassment; other records obtained pursuant to university policy and procedure; and, after giving notice to the individual(s) to whom the files or records pertain and an opportunity for that individual(s) to raise objections, other relevant files and records not in WPLR's possession. The provost will rule upon any objections.

---

[1] The process for investigating complaints of prohibited discrimination and protected- status (including sexual) harassment, sexual assault/violence is distinct from the mediation process. The same person may not perform the functions of mediator and investigator in a single case.




Procedures for Resolution of Reports Against Faculty Under Cornell University Policy 6.4
Originally Issued: 7/8/1996
Last Updated: 2/8/2017                     14

### B. Challenge to Investigator

When a Policy 6.4 complaint is brought against a staff or faculty member acting in the scope of their Cornell employment, Cornell reserves the right to determine the scope of the investigation and whether the claim is ripe for investigation under this policy. If there is a process that is not yet completed, a final decision has not yet been made, and/or a clear alternative path for a complainant's concerns to be addressed in a different process, Cornell may choose to conduct a limited investigation under this policy or wait before commencing an investigation under this policy. That determination will be made by the Director of Workforce Policy and Labor relations.

## APPENDIX A: COMMITTEE ON ACADEMIC FREEEDOM AND PROFESSIONAL STATUS OF THE FACULTY PROCEDURES

Note: Each year, the Office of Workforce Policy and Labor Relations (WPLR) must train members of the Committee on Academic Freedom and Professional Status of the Faculty (the "Committee") to recognize prohibited discrimination and protected-status harassment.

### I. GENERAL PROVISIONS

1. Any member of the Committee whose personal or professional relationships might interfere with providing a fair and unbiased hearing will recuse himself or herself from the proceedings. A member of the Committee who is in the same department as the respondent will recuse himself or herself. The respondent and complainant or parties may challenge any member of the Committee who does not recuse him or herself. Following such a challenge, if a majority of the other members of the Committee present and voting, not including recused members and student members, votes in favor of recusal, then the challenged member will recuse himself or herself.

2. The remaining members of the Committee, not including recused members and student members, will participate in the proceedings. If there are fewer than five such remaining members of the Committee, the Committee will decline to hear the grievance until the Nominations and Elections Committee of the Faculty Senate adds members to the Committee to make a complement of five participating members. The participating members will be referred to hereinafter as the "members of the Committee."

3. A majority of the members of the Committee will constitute a quorum for any hearing. Decisions of the Committee will be rendered by a majority vote of the members present and voting. The Chair (paragraph five) will not vote on any matter except in the case of a tie.

4. Each person who appears before the Committee will be advised that he or she is obligated to treat everything that he or she learns in the proceedings as confidential, and may not disclose this information to any other person, unless compelled by law to do so.

5. The members of the Committee will elect a chair from among themselves. Subject to paragraph six, the chair will control the conduct of all proceedings and will make such procedural rulings as may be necessary to assure fairness and to avoid unnecessary delay, including rulings on the relevance of suggested witnesses or lines of questioning. The Committee may overrule any such decision by a majority vote of the members present and voting.



6. The Committee may appoint a faculty member who is a member of a state bar to serve as an independent legal advisor to advise the Committee on all matters relating to the performance of its responsibilities hereunder. The legal advisor will not be a Committee member and will not have a vote in the Committee's decisions. At the invitation of the Committee, the legal advisor may be present at any time during the proceedings and during the Committee's deliberations. The chair may authorize the legal advisor to control the conduct of the proceedings and to make procedural rulings. The Committee, by a majority vote of the members present and voting, may withdraw this authority at any time and may overrule any procedural ruling made by the legal advisor.

7. The Committee will recommend that the Faculty Senate maintain a list of individuals who have agreed to serve as volunteer advisors or attorneys for the parties in the Committee's proceedings. Nothing in these procedures will be interpreted, however, to obligate the Faculty Senate or the Committee to guarantee that the respondent and the complainant or parties will be able to obtain the services of an advisor or attorney.

8. The Committee has a responsibility to conduct fair and even-handed proceedings, and to see that all parties and witnesses are treated in a polite, respectful manner.

9. The Committee will conduct formal hearings as provided in Section III, unless the respondent waives his or her right to such hearings, in which case the Committee will conduct informal proceedings as provided in Section II. Any waiver of the right to formal hearings will be irrevocable.

## II. INFORMAL PROCEEDINGS

10. This section will apply only if the respondent waives his or her right to formal hearings. Section III will not apply in such a case.

11. The Committee will invite the respondent to explain why he or she feels that the charges and/or recommended sanction of the investigation report are unjustified. The respondent may be accompanied by an advisor or attorney of his or her own choice, who may advise the respondent but may not participate in the proceedings in any other way.

12. The Committee may also call the complainant or parties and any witnesses. A complainant or witness who is called may be accompanied by an advisor or attorney of his or her own choice, who may advise the complainant or witness but may not participate in the proceedings in any other way.

## III. FORMAL HEARINGS

13. The university will provide an attorney whose sole responsibility in these proceedings will be to support the charges and recommended sanctions of the investigation report. This attorney will be entitled to present witnesses and cross-examine witnesses (including the complainant or parties and the respondent) who appear before the Committee.

14. The respondent will be entitled to be accompanied and represented by an advisor or attorney of his or her own choice.

15. The respondent will be entitled to be present throughout the hearings and, either personally or through his or her advisor or attorney, will be entitled to give evidence and to present witnesses on

Procedures for Resolution of Reports Against Faculty Under Cornell University Policy 6.4
Originally Issued: 7/8/1996
Last Updated: 2/8/2017                 16



his or her own behalf, to hear the evidence against him or her, and to confront and cross-examine adverse witnesses (including the complainant or parties) who appear before the Committee.

16. The Committee will encourage WPLR to turn over to the respondent all exculpatory evidence in their investigatory files.

17. Each complainant will be entitled to be accompanied and represented by an advisor or attorney of his or her own choice.

18. Each complainant, either personally or, if accompanied and represented by an advisor or attorney, through that advisor or attorney, will be entitled to give evidence and to present witnesses on his or her behalf and to confront and cross-examine adverse witnesses (including the respondent) who appear before the Committee.

19. Witnesses may raise objections to any question posed to them, either personally or, if represented by an advisor or attorney, through that person. The Committee will rule on such objections in accordance with paragraphs five and six.

20. The members of the Committee may question all those who appear in the hearings. The members of the Committee may adjourn temporarily to consult concerning the questions to be asked.

21. The Committee will endeavor to evaluate all of the relevant facts of a given case. The university, the complainant, and the respondent, may offer evidence. The Committee will not find the respondent responsible unless the Committee, after evaluating all of the evidence, is satisfied that the charge has been proven by clear and convincing evidence.

22. Prior findings of responsibility for prohibited discrimination or protected-status harassment and prior mediation agreements in such cases will be admissible. Records of prior accusations not leading to findings of responsibilities and records concerning similar behavior not subject to the complaint(s) in the case will not be admissible. Testimony about prior accusations or similar behavior will be admissible.

23. The Committee will base its findings of fact and conclusions solely on the evidence presented at the hearings.

24. All hearings will be tape-recorded. The Committee will permit the respondent and the complainant or parties to listen to the tape recordings upon request. However, the parties may not take any written notes of the recordings.

## IV.  DECISION AND REPORT

25. The Committee will decide by a majority vote of the members present and voting whether there is clear and convincing evidence to find that the respondent is responsible for each of the charges specified in the investigation report. Only those members who attended all of the hearings may vote. The Chair will not vote except in the case of a tie.

26. The Committee will make a written report setting forth the Committee's findings of fact, conclusions, and recommendations. The Committee will transmit this report to the appropriate dean



or equivalent unit head, the respondent, each complainant, and WPLR. Before being given a copy of the Committee's report, the respondent and each complainant will be required to sign a statement of confidentiality affirming that he or she will not divulge the contents of the report to any other person, unless compelled to do so by law. The Committee's report will include a discussion of the rationale for its findings of fact, conclusions, and recommendations.

27. The respondent, a complainant, or WPLR may appeal the Committee's findings of fact and conclusions to the University Faculty Committee, as provided for in Cornell University Policy 6.4. Following the conclusion of an appeal, the respondent, a complainant, or WPLR may rebut the Committee's recommendations concerning sanctions to the appropriate dean or equivalent unit head, as provided in Cornell University Policy 6.4.

28. The Committee will have discretion to release a public statement of its findings of fact, conclusions, and recommendations. In exercising its discretion, the Committee will take into account concerns about confidentiality.

29. These procedures and any subsequent amendments will become effective upon ratification by the Faculty Senate.

Procedures for Resolution of Reports Against Faculty Under Cornell University Policy 6.4
Originally Issued: 7/8/1996
Last Updated: 2/8/2017                18

