# EXHIBIT "F"

| | |
|---|---|
| Interviewer: | This is a respondent intake with Giuseppe Pezzotti on April 23rd, 2019. |
| Interviewer: | Hi there. |
| Interviewee: | Good morning. |
| Interviewer: | Good morning, I'm Chantelle Cleary. |
| Interviewee: | Nice to meet you. |
| Interviewer: | May I close the door? |
| Interviewee: | Oh, yeah. Of course. |
| Interviewer: | Great. Okay. Nice to meet you. |
| Interviewee: | Nice to formally meet you. I don't have my ID with me. |
| Interviewer: | That's okay. |
| Interviewee: | I'm just... Put down, I don't know if this is appropriate. |
| Interviewer: | Perfectly fine. All right, thank you for meeting with me today. |
| Interviewee: | Oh yeah, my pleasure. |
| Interviewer: | Like I said, my name is Chantelle, I'm the university's Title IX Coordinator. My job is to coordinate the university's responses to any form of discrimination based on sex, which includes any form of sexual or related misconduct. |
| Interviewee: | [inaudible 00:00:50]. |
| Interviewer: | Yeah. My office has received a complaint, formal complaint against you, and so the [crosstalk 00:00:57] purpose of today's meeting is to inform you of the nature of the complaint. Also, to talk to you about your rights moving forward, and also to explain the process to you moving forward. Whenever somebody meets with us, they have the right to have an advisor of their choice present with them. And so, I'm not asking... I'm not going to be asking you any questions today about the allegations. I'm going to tell you what they are. I would... Not asking you to respond to them today. You'll have an opportunity to respond- |
| Interviewee: | Yeah, I think I've read the information [crosstalk 00:01:26]. |
| Interviewer: | Yeah, okay. |

| | |
|---|---|
| Interviewee: | It's pretty self-explanatory. |
| Interviewer: | Okay. Then I can start with just letting you know what the complaint entails, and giving you information about that. Then if you have questions you can ask questions. We can also go through information about the process. The university has received a complaint, or my office particularly, alleging that on or about March 15th, 2019, at approximately 10:30 PM while at the Statler Hotel in the restaurant area, where the... |
| Interviewee: | Yeah, there was at the HEC Weekend, so there was a big conglomeration of people there. |
| Interviewer: | Okay. It's alleged that during that period of time while at the Statler, you touched ▉▉▉▉ who is a student here, an undergraduate student here. Touched her arm, you touched her waist underneath her clothes and that you grabbed her buttocks without her consent. Okay? |
| Interviewee: | I do not recall that. But that's, you know, it's... |
| Interviewer: | Right. These are allegations at this time. |
| Interviewee: | The person, yeah. |
| Interviewer: | Okay? But this is what the student is alleging. Again, they are allegations. There's going to be an investigation that's going to follow. I will be assisted by a faculty co-investigator. That faculty co-investigator will be present moving forward at our meetings. If you'd like, I can talk to you about the process moving forward and your right to those process. |
| Interviewee: | Yeah. |
| Interviewer: | Okay. We have already conducted an investigative interview of the student, ▉▉▉ ▉▉▉ and she's described her perspective and what she alleges her experience was on the date and time that we discussed. The next step in our investigation is to speak to other folks who may have information about what ▉▉▉ is alleging. Other folks that might've been present, other folks that she may have spoken to after the incident. |
| Interviewee: | I'm really, I'm very... I'm lost, that's why... |
| Interviewer: | Then you would have an opportunity at some point, if you wanted to, to share your perspective and you could share that perspective after having a more full understanding of what ▉▉ is alleging and also of what other folks tell us relative to her allegations, if other folks have information that's relevant. You would also have the opportunity to pose questions of ▉▉ through me, so you could say, "I'd like you to go back and ask ▉▉ the following questions about what she's alleging." You'd also have the opportunity to do that with respect to |

Final Investigative Record
(20181900)
Distributed November 8, 2019

8 of 141

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| | some of the other witnesses that we speak to, and you'd have an opportunity to propose that I speak to certain witnesses. If there are folks that were there that night that you think I should speak to, please let me know who those folks are and we'll talk to them. |
| Interviewee: | I'm trying to think therefore, I'm just... |
| Interviewer: | You'll have plenty of time to think. You don't have to answer or give us any information today. Then, so my office... Actually, in this case it'll be me and the faculty co-investigator will speak to everybody and anybody that both you and ▇ think we should speak to. If those folks are able to offer relevant information. For example, if you were to say, "I would like you to speak to..." I'm going to make up a name, okay? "I would like you to speak to Bill because Bill was there that night when ▇ and I were in the same social circle, and Bill can tell you that that didn't happen." I would definitely speak to him, right? |
| Interviewee: | Yeah. |
| Interviewer: | But if you were to say, "I'd like you to speak to my best friend who was not there that night because my best friend will tell you I would never do something like that." I'm not going to... Does that make sense? |
| Interviewee: | Yeah, it makes sense. Yeah. |
| Interviewer: | Okay. But we would speak to anybody that's relevant. Then the job of the faculty co-investigator and I would, at some point, be... Just say, "Okay, we've talked to everybody that we need to talk to. We've reviewed all the evidence that we may want to review." At that point, we will then make a finding... |
| Interviewee: | And find... Yeah. |
| Interviewer: | ... as to whether or not- |
| Interviewee: | In the investigation, I know you're going through the process step by step. |
| Interviewer: | Yeah, as to whether or not there's been a violation of university policy. That finding would be a recommendation, and our recommended findings would be sent up to Dean Walsh, and Dean Walsh could either accept the recommendation or reject the recommendation, or send it back for more investigation. She might read our report and say, "You know what? I think you need to talk to these other people." Then, as investigators, we would go back and speak to those folks, and give and updated report to Dean Walsh. |
| Interviewee: | Okay. |
| Interviewer: | Ultimately, it will be up to the dean as to whether or not there's- |

Final Investigative Record
(20181900)
Distributed November 8, 2019

9 of 141

Private
Distribution Not Permitted - See Policy 6.4

Interviewee: To make a decision, yeah, to...

Interviewer: Correct.

Interviewee: Yeah.

Interviewer: If there's a finding that you did violate university policy, my office may be asked to recommend sanction, or we may recommend sanction on our own volition, but ultimately again, it's also up to the dean to determine what to do.

Interviewee: The dean would... Yeah, she would what to do, yeah.

Interviewer: Correct. Okay? That is the process, briefly. Do you have any questions about that?

Interviewee: No, I don't have a... First of all, I'm surprised, and it was the HEC Weekend, I was walking around, there was so many alumnis and there was... I think-

Interviewer: May I? I don't want to interrupt you, but I'm going to. Here's why. It sounds like you're going to start to tell me about your perspective of what happened that night.

Interviewee: Yeah.

Interviewer: I don't know that you should do that right now.

Interviewee: No, no. No, I don't want... I'm just, I'm thinking.

Interviewer: You're processing.

Interviewee: I'm thinking there were a lot of people around, and I really... I'm just thinking because what's must've been a... I don't know, a few seconds or... I don't know, because I was going around because I'm also an advisor of HEC and checking the function. There were some old alumni that I was talking to, so I would have to think because I'm sort of lost.

Interviewer: Yeah. I think taking some time to process all of the information that I've just given you. You have a copy of this with the allegations. Then thinking, and then coming back and either by email saying, "Hey, I want you to talk to these people." Or scheduling an appointment to come in. At some point, I will schedule an... I reach back out to you and say, "We're at this stage in the investigation where we'd like to hear your perspective." Then you could come in. You could participate if you want to, or you could also refuse to participate.

Interviewee: Refuse. Yeah.

Final Investigative Record
(20181900)
Distributed November 8, 2019

10 of 141

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| Interviewer: | It's completely up to you. If you refuse to participate, of course, we still move forward, [crosstalk 00:08:00]. |
| Interviewee: | You have to go through the process, yeah. |
| Interviewer: | We encourage people to participate because if you refuse to participate, we'll make findings without your input. And so, your perspective will not be considered when we make findings. Does that make sense? |
| Interviewee: | Yeah, makes sense. |
| Interviewer: | Those findings can have an impact on you and your standing as a faculty member here. And so, we encourage that you do participate, but you don't have. |
| Interviewee: | Yeah, I don't have to. I know you try to maintain the balance between... |
| Interviewer: | Mm-hmm. Yeah. The other thing I will tell you is that you have the right to have an advisor. The university will provide with an advisor free of cost. The university provides to folks who are accused of engaging in university policy violations, particularly in this case, a violation of policy 6.4. we provide respondents, that's what we call the person who's accused, with advisors, and those advisors are called the judicial codes counselors. They are law students. They are advised and supervised by Professor Kevin Claremont at the law school. They are confidential. They're not acting as a lawyer, but they're acting as advisors. |
| Interviewer: | They have a very clear understanding of the procedures and they work with folks who are accused all the time to help them navigate and make decisions in this process. When you're thinking about this, they may ask you questions that you might not think... Part of their role, the advisor, is to prepare you for our interview, right? |
| Interviewee: | Oh, okay. |
| Interviewer: | They might sit down with you and say, "Professor Pezzotti, when the Title IX coordinator, when the investigators interview you, they might ask you this, so you should think about what your answer might be to that question." They'll also go through with you to help you identify who are some witnesses we may want to speak to. They'll probably ask you, "Tell us your perspective." So you talk to them about your response to what's being alleged here in confidence. Everything you say to them is completely confidential. |
| Interviewee: | Confidential, yeah. |
| Interviewer: | Then they can help you determine, A, if you want to participate, and B, to what extent you want to participate, and what information you want to offer. I always |

Final Investigative Record
(20181900)
Distributed November 8, 2019

11 of 141

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| | encourage folks to connect with an advisor, and that advisor can be one of the JCCs, or you're free to obtain your own advisor. |
| Interviewee: | Yeah, yeah. I'm just lost because there was so many people, and I know that I was there. There were a lot of alumni, former students, and I know that I think I introduced the young lady to these alumnas, they came back... I don't know, Chicago someplace, and just... I was just there, and that's what I remember. I'm sort of lost because I... How can I touch her back? That's... You know what I'm saying? I'm sort of puzzled from that one. Because there were three people. |
| Interviewer: | Again, I'm not going to ask you any questions, based on what you're saying- |
| Interviewee: | Yeah, but [crosstalk 00:11:11] you're telling me, I'm just sort of... How could have? That's all. |
| Interviewer: | Well, what I can say to you is that she's reporting- |
| Interviewee: | She's reported maybe that could be, yeah. |
| Interviewer: | What I can do if you would like is I could connect you with the Office Of The Judicial Codes Counselors. Some folks, you can have as many advisors or support folks that you like within reason. |
| Interviewee: | Yeah, of course. |
| Interviewer: | You may choose to... Some folks, they'll have a JCC working with them because the JCCs are really familiar with our process, and they'll have another advisor, like a lawyer that they've hired. They can work together if everybody agrees, so you can have both or you can just have one and not the other. Some folks don't want to incur cost, so they use the JCCs. But would you like me to at least connect you with the JCC by email? |
| Interviewee: | Yeah, that would be nice. |
| Interviewer: | Okay. |
| Interviewee: | Where is located the JCC? |
| Interviewer: | They're the law school, but they sometimes will come to you. Okay? |
| Interviewee: | See, I can talk them more. |
| Interviewer: | You can talk to them in complete confidence. Anything you say to them is completely confidential. |
| Interviewee: | Now I have a question. When this report was filed? I'm really... |

Private

| | |
|---|---|
| Interviewer: | The report was filed, she first made the report... |
| Interviewee: | Because I know it's HEC Weekend, a lot of alumni come back. It is around March or something. |
| Interviewer: | She made the report on March 16th of 2019, and she was first interviewed by the office on March 27th, and between then and now, she was debating whether or not and making a decision as to whether or not she wanted to file the formal complaint. We received the formal complaint on the 15th of April, and then notified you of that yesterday. |
| Interviewee: | Oh, okay. |
| Interviewer: | Okay? We did not notify you... The reason for the delay between the 15th and today is because we're trying to obtain a faculty co-investigator, and then we did that on Friday, but we don't like to notify folks of the fact that a complaint's been filed against them on a Friday, because if you need resources, they might not be available to you over the weekend. |
| Interviewee: | Yeah, it's the weekend. I understand. |
| Interviewer: | That's why we waited until Monday. I'll get you a folder for this. The other thing I will tell you that is we understand that... There's a couple of things I want to go over. One is, we understand that getting information like this is oftentimes stress inducing. |
| Interviewee: | Yeah, I know it's [inaudible 00:13:37]. |
| Interviewer: | There are resources for you. Confidential resources for you, if you feel like you need to check in with somebody about the stress, including FSAP. Contact information- |
| Interviewee: | No, I don't think I would... I understand that there would be people to help, but I... |
| Interviewer: | I also want to let you know that we don't share any of the information about this with anybody in your department other than the dean and the associate dean. The dean and the associate dean are aware that a complaint has been filed and that an investigation is pending. |
| Interviewee: | He's not been- |
| Interviewer: | Your chair has not been notified and won't be notified at this point. Other folks- |
| Interviewee: | What is the chair? |

Final Investigative Record
(20181900)
Distributed November 8, 2019

13 of 141

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| Interviewer: | Do you have a chair in your faculty in the department? A faculty chair in your department? |
| Interviewee: | Yeah, might be a faculty chair. Yeah. |
| Interviewer: | Nobody's been notified but the dean and the associate dean. |
| Interviewee: | Yeah, the two most important people. |
| Interviewer: | Yeah. The dean is notified, of course, because she's ultimately going to have to make a decision. |
| Interviewee: | Sure. |
| Interviewer: | But there may be faculty members that we... Other faculty, so some of your colleagues that we may interview in the course of this investigation. I will tell you that we let any witness that we speak to know that our expectation of them is that they keep the matter private... |
| Interviewee: | Private. |
| Interviewer: | ... and not share information. We are not... I'm not saying to you that you're not allowed to share information. |
| Interviewee: | To share, yeah. |
| Interviewer: | But we do encourage that you keep the matter private. We also- |
| Interviewee: | Yeah, that's always a... |
| Interviewer: | I also want to... |
| Interviewee: | [crosstalk 00:15:04]. |
| Interviewer: | ... let you know that at this time I'm going to ask that you not have any contact whatsoever with ▮▮▮▮ either directly or through a third party. |
| Interviewee: | I always make the point to say hi to all the student [inaudible 00:15:16]. I would see and I wouldn't say hi, and therefore I wouldn't really... I wouldn't. |
| Interviewer: | Yeah, so I guess- |
| Interviewee: | She's not even my student in my class. |
| Interviewer: | Okay. But so if you do see ▮ in the hotel, school, or any- |
| Interviewee: | I won't say anything. |

Final Investigative Record
(20181900)
Distributed November 8, 2019

14 of 141

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| Interviewer: | Yes, please. No contact. |
| Interviewee: | Yeah, I want your advice. I will. |
| Interviewer: | No contact whatsoever either directly or through a third party. If you have colleagues that have a relationship with her, we don't want those colleagues reaching out to her to inquire as to what's going on for you. |
| Interviewee: | Yeah, it should be a private matter. |
| Interviewer: | Yes. No contact either directly or through a third party. If you see ▬ I would ask that you just go the other way. |
| Interviewee: | [crosstalk 00:15:55]. Like there's nothing. I got it. Yup. |
| Interviewer: | The other thing I wanted to share with you is the university has a strict prohibition against what we called retaliation. I need to describe this to you, okay? |
| Interviewee: | I will never even think about it. |
| Interviewer: | But retaliation is any adverse act taken against a person for their participation in this process. Okay? Adverse acts can be reaching out to them and attempting to get them to withdraw their complaint. It could be intimidation, it could be threats. |
| Interviewee: | No, no way. |
| Interviewer: | It could be things as benign as, "Why are you doing this to me? You could ruin my career." That could be considered retaliation. |
| Interviewee: | No, no, no, no way. |
| Interviewer: | But I want you to know not only am I expecting that you not engage in retaliation, but if you feel as if somebody's retaliating against you in this process. Let's say, for example, a faculty member or a student comes up to you and says, "I can't believe this. You're touching... " |
| Interviewee: | [crosstalk 00:16:49]. |
| Interviewer: | Or something- |
| Interviewee: | Whatever, yeah. |
| Interviewer: | Let us know, and we'll address it. Okay? |
| Interviewee: | Yeah. |

Final Investigative Record
(20181900)
Distributed November 8, 2019

15 of 141

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| Interviewer: | The retaliation provision serves to protect you, but it's also an admonition that we expect you to follow. |
| Interviewee: | Yeah. |
| Interviewer: | Okay? The confidentiality of this process, again. My office keeps everything very private. What you share with us is not confidential, it's private. |
| Interviewee: | Private. |
| Interviewer: | We're not going to share it with your colleagues. We're not going to share with your students. We are going to share with folks that we need to share with in order to effectively conduct an investigation and to reach findings. Does that make sense? |
| Interviewee: | Makes sense. |
| Interviewer: | Okay. There's other additional information in here for you that I'll let you look at on your own, and if you have questions about any of those things, you can always reach out by email, by phone, or you can come back in and talk to us. Do you have any other questions for me at this time? |
| Interviewee: | No, I don't have any question. I'm sort of stunned, that's the first thing that happens, and I'm trying to think what's the motivation of the person to... I'm trying to think, also, it was HEC where I talked to a lot of people because I was floating around, and it was in one of the lounges, there. That's vaguely I remember those things, there was an alumni outside I need to... Now to think her name, and she's not at Cornell, she graduated. She was my student a long time ago. |
| Interviewer: | Well, we would reach out to anybody if we could contact them. |
| Interviewee: | [crosstalk 00:18:16] because she was there, therefore I'm just lost at this point. |
| Interviewer: | Okay. |
| Interviewee: | I'm thinking, I don't know, because I'm really thinking now that that's what... I looked... I'm lost because, you know, there were three person. Was myself and these, I think I introduce her to meet her, an alumna, to help her out. |
| Interviewer: | I think- |
| Interviewee: | I think that's... After I left right away and I don't know, and after maybe I... I don't know, I could've... It's just to say hi, I don't know. I'm just- |
| Interviewer: | Professor Pezzotti, for the record, I want to just mention that while you're describing you're touching your back, and your shoulder. |

| | |
|---|---|
| Interviewee: | Maybe or [crosstalk 00:19:25]... I'm just, I do not know if... |
| Interviewer: | I completely understand the inclination to want to share and process through this verbally with someone. |
| Interviewee: | Yeah, because- |
| Interviewer: | I'm not the right person to do that with at this time. |
| Interviewee: | No, I know. |
| Interviewer: | Anything that you say to me now can be used in this investigation. I strongly encourage that you engage in this processing with an advisor that is confidential. Does that make sense? |
| Interviewee: | That makes- |
| Interviewer: | It's not that I don't want to hear what you have to say, it's not that I don't think it's important. |
| Interviewee: | No, no, but you're right. |
| Interviewer: | I want to respect your rights. |
| Interviewee: | But I [crosstalk 00:19:56] when you... someone tells you something, you try to think what... When there are three human beings that how... How I would do something like that? That's my thinking, you know what I'm saying? That's really it. |
| Interviewer: | We'll explore that more when we sit down and we talk about your perspective, but before that I think you should... I'm not ready to ask you questions. I don't have all of the information yet either. And so, I don't want to ask you to respond to half of the information. |
| Interviewee: | To half. |
| Interviewer: | And so, again, I know it might feel like I'm shutting you down right now, but I'm doing that because I want to do an investigation that's fair and thorough. |
| Interviewee: | I know. You want to be fair to all of the [crosstalk 00:20:42]. |
| Interviewer: | To all of you. |
| Interviewee: | No, you're very right. |
| Interviewer: | All right? |

Final Investigative Record
(20181900)
Distributed November 8, 2019

17 of 141

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| Interviewee: | But you know, when someone tells you something, all the sudden you start thinking and that's why, yeah. [inaudible 00:20:53] the same thing I did to the other lady, you know, and so [inaudible 00:20:56] I hugged her when she came and she hugged me. She was an alumna. I'm just... When you say hi, goodbye, and all those... I don't know, so I'm lost. But, and everyone perception is each one, they have their own way to perceive something. I feel lost, you know what I'm saying? Because that's just [inaudible 00:21:26]. |
| Interviewer: | I'm going to connect you with the JCC. I think they're usually really responsive, so you can decide after speaking with them whether or not you want to connect. You can talk with them about your reactions to this report and how you might respond to it if you want to. |
| Interviewee: | [crosstalk 00:21:43]. |
| Interviewer: | Then we will meet again in the next couple week, in the next- |
| Interviewee: | With you, I'm going to meet? Okay. |
| Interviewer: | Me, yup. I'll be the investigator in this case along with Jery Stedinger who is a professor out of the engineering school, and Jery will serve as the faculty co-investigator in this case. |
| Interviewee: | Okay. |
| Interviewer: | The faculty co-investigator's role is to assist me in investigating and in writing the report, but the lead, I will take the lead in the investigation simply because that's my job. |
| Interviewee: | No, you have to do it. |
| Interviewer: | Yeah. Okay? |
| Interviewee: | I totally understand. I know you're doing your job. You're not doing anything that is... |
| Interviewer: | Thank you. |
| Interviewee: | I feel lost, that's all. |
| Interviewer: | Okay. |
| Interviewee: | Because I... |
| Interviewer: | I understand that feeling, I'm sorry. Like I said, I know this is a stress inducing process, but what I can tell you is that we'll work as quickly through it as we can. It is not... I'm going to also be very honest with you too, it's not a fast process. |

Final Investigative Record
(20181900)
Distributed November 8, 2019

18 of 141

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| Interviewee: | No, [crosstalk 00:22:37]. |
| Interviewer: | Because there are folks that we need to speak to. There are reports that we need to write. We want to give you an opportunity to respond. My expectation is that sometime in late May or June, early June, I'll be reaching back out to you to say, "Hey, why don't you come in and let's talk about your perspective." At that time I can give you more information... |
| Interviewee: | More information. |
| Interviewer: | ... we can go from there. Okay? |
| Interviewee: | What other advice can you give me right now? |
| Interviewer: | I'm not allowed to give you any advice. |
| Interviewee: | Not advice, but should I try to get in contact with the other, the alumna that was there? |
| Interviewer: | No. Okay, that's a good question. |
| Interviewee: | [crosstalk 00:23:08]- |
| Interviewer: | I don't want you to get in contact with anybody. I want you to give me those, the names of the folks who you think have information and I will contact them. |
| Interviewee: | See, that's the only person that was there. There was a myriad of people way in those... |
| Interviewer: | Yeah. Here's why I don't want you to reach out to her to tell her that I'll be reaching out. Because then I will ask her, "Have you spoken with Professor Pezzotti about this?" |
| Interviewee: | Okay, I got it. |
| Interviewer: | Then there can be... |
| Interviewee: | I got it. |
| Interviewer: | ... a presumption that you coached her to say what she says. Don't do that. Okay? |
| Interviewee: | No. I'm going to let her... Might give you the name, but I [inaudible 00:23:42]. |
| Interviewer: | I will reach out to her. |
| Interviewee: | I understand. |

Final Investigative Record
(20181900)
Distributed November 8, 2019

19 of 141

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| Interviewer: | Okay? Not that I, in any way, think that you would do that, but you don't even want to be... we don't even want to create a situation where that can be a question. |
| Interviewee: | A question. Yeah. |
| Interviewer: | Right? To keep it as... What's the word? |
| Interviewee: | Private? |
| Interviewer: | Private, but also... My conversation with her, right, will be evidence in this case, if she's willing to speak with me. We want the evidence to be untainted. And so, there is an... there could be an argument that she's not remembering correctly or providing us with accurate information if you've spoken with her after receiving this complaint, right? Because... |
| Interviewee: | Yeah. |
| Interviewer: | If I'm the first one that advises her of that, there's less of an argument that she's saying things that are... |
| Interviewee: | Yeah, I know. I totally understand. I should avoid, don't say anything to Miss ▇▇▇ Nothing. |
| Interviewer: | Correct. Nothing. |
| Interviewee: | Okay, because I always, when I see her, "Hi, good morning. Good afternoon." |
| Interviewer: | Nothing. |
| Interviewee: | No way. For the person that I'm going to get the full name and everything, just I give you the name to you without any contact. I got it. |
| Interviewer: | I'm going to send you an email at the end of our conversation... meeting today, just so that you have my email address and just saying thank you for meeting. I'm waiting for the name of this alumna. If you have it, I will reach out to her and then I'll reiterate some of the other stuff we talked about today just so you have it, and then you can respond to that email. |
| Interviewee: | Okay. |
| Interviewer: | Okay? |
| Interviewee: | Any other advice that I should be aware? Thing that... |
| Interviewer: | No. Just if there's any information that you think we should be exploring, let me know, and we'll explore it. Okay? |

Final Investigative Record
(20181900)
Distributed November 8, 2019

20 of 141

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| Interviewee: | Yeah. I think that's... Really, that's the only... |
| Interviewer: | There may not be a lot. That's... |
| Interviewee: | That's the only thing I remember, because I was talking to many alumni going around, you know? Some of them come up and hug, you know, [crosstalk 00:25:43]... |
| Interviewer: | Understood. |
| Interviewee: | ... were my former student going back to 30 years ago. And so... I think I'm thinking the room that, one of the room that I saw the alumna there, and there was Miss ▓▓▓▓ there, and I introduced them. That's all. I was there no more than two, three minutes and left because I was walking around and going to different... I... But sometime perceptions... [inaudible 00:26:16], I wouldn't do anything to them. |
| Interviewer: | I appreciate it. |
| Interviewee: | Yeah, no way. Just... That's something that I never expected. It's 35 years that I teach there. |
| Interviewer: | Okay. |
| Interviewee: | This the first time that something happened to me. |
| Interviewer: | Okay. |
| Interviewee: | I'm lost, first of all. I do not know. |
| Interviewer: | Okay. All right, so I'm going to... When I leave here I'm going to send you the email. I'm also going to connect you with the JCCs and then we'll reach out. I'll wait to hear from you for certain things, and then I'll reach out for another interview down the line. |
| Interviewee: | But I really appreciate it. You're very nice and professional. |
| Interviewer: | Thank you. |
| Interviewee: | [inaudible 00:27:09], you're doing your job. I totally understand. |
| Interviewer: | Thank you for understanding. Okay. I'm going to... There's nothing more that I want to share with you right now. It sounds like you don't have any other questions. |

Final Investigative Record
(20181900)
Distributed November 8, 2019

21 of 141

Private
Distribution Not Permitted - See Policy 6.4

Private
Distribution Not Permitted - See Policy 6.4

| | |
|---|---|
| Interviewee: | No, I don't have. The only question were about... was about the third party, the person that was there. That's what [inaudible 00:27:34]. I know what I need to do. If I would have any question I'll get in touch with you. |
| Interviewer: | Just email me. Okay, or call. Or even stop in. |
| Interviewee: | Or call. [crosstalk 00:27:41]. |
| Interviewer: | Okay? Okay? All right. |
| Interviewee: | Good. Thank you, Miss... |
| Interviewer: | Thank you. It was nice to meet you. |
| Interviewee: | [inaudible 00:27:45], the student, ▇▇▇▇ the graduating- |

Final Investigative Record
(20181900)
Distributed November 8, 2019

22 of 141

Private
Distribution Not Permitted - See Policy 6.4